*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KEITH ELDON FERRIER,

        Defendant-Appellant.

UNPUBLISHED
June 13, 2024

No. 364904
St. Clair Circuit Court
LC No. 22-001612-FH

Before: MURRAY, P.J., and RIORDAN and D. H. SAWYER*, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for possession of less than 25 grams of heroin and fentanyl, MCL 333.7403(2)(a)(v), two counts of felon-in-possession of a firearm, MCL 750.224f, two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and maintaining a drug house, MCL 333.7405(1)(d). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 18 to 180 months' imprisonment for possession of less than 25 grams of heroin and fentanyl, 18 to 300 months' imprisonment for each count of felon-in-possession, 18 to 180 months' imprisonment for maintaining a drug house, and two years' imprisonment for each count of felony-firearm. We affirm.

This case arises out of a Drug Task Force (DTF) raid at defendant's home. The DTF found fentanyl, methamphetamine, digital scales, packing materials, pills, a rifle, and a shotgun in the house. Arnold pleaded guilty pursuant to a plea agreement to a variety of drug charges.

On November 21, 2022, defendant filed a motion to permit the reading of Arnold's plea hearing testimony at trial under MRE 804. Defendant argued that Arnold, who was listed as a witness and was a codefendant in the case before taking a plea deal, was subject to extensive cross-examination by the prosecution and made statements that went to the core issue of whether defendant owned the drugs and firearms at the center of this case, along with statements on defendant's knowledge of the facts that led to his arrest. Defendant intended to cross-examine Arnold at trial, however, she passed away after the time of her guilty plea and before defendant's trial. Defendant argued Arnold's testimony was permitted as an exception to hearsay under MRE 804(b)(1) as former testimony and that Arnold was unavailable because of her death. Defendant

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

-1-

contended that the prosecution had the opportunity to develop her testimony at the plea hearing when it cross-examined her. Defendant argued that Arnold's testimony was required for defendant to present a complete defense, but did not explain what that defense was.

At a hearing on the motion, the prosecution argued Arnold was the subject of the testimony at the plea hearing, not defendant, and the prosecution did not have the same opportunity to develop testimony as required under MRE 804. The trial court found that Arnold was unavailable under MRE 804(b)(1), but that the prosecution did not have a similar motive and opportunity to develop her entire testimony. The prosecution was able to ask questions of Arnold, but the court noted that it told the prosecution to move on from a line of questioning because it was not getting the answers it was looking for. The court further stated that all of the questions asked by the prosecution that gave rise to the factual basis for Arnold's plea involved only Arnold, not defendant. The trial court did not find defendant's argument persuasive that examining a person giving a plea is an opportunity to fully develop testimony. Additionally, the court noted the nature of a plea hearing is vastly different from other proceedings, because Arnold was making statements about what she did to give rise to her guilty plea. The trial court examined defendant's motion under MRE 804(b)(3) as well, as a statement against interest, and found that Arnold's testimony against herself was clearly a statement against interest. However, the court determined Arnold's testimony could be split into two separate issues: statements made giving rise to the factual basis for her plea agreement and statements related to defendant. The trial court ultimately decided to allow Arnold's testimony as it pertained to her own admissions of guilt, but did not admit the remainder of her testimony regarding defendant, because her statements after establishing her guilt were inherently untrustworthy.

On appeal, defendant argues four points: that the trial court misapplied MRE 804(b)(1) and deprived him of his right to present a defense when it did not allow the entirety of Arnold's testimony from her plea hearing to be admitted at trial; that the trial court erred when it read the jury a flight instruction; that the prosecution's misconduct deprived defendant of a fair trial; and that the cumulative effect of these errors was prejudicial and requires a new trial. We disagree.

## I. MRE 804(b)(1) AND THE RIGHT TO PRESENT A COMPLETE DEFENSE

Defendant argues that the trial court misapplied MRE 804(b)(1)[1] and deprived defendant of his right to present a defense when it refused to admit Arnold's full testimony from her plea hearing. We disagree.

This Court reviews a trial court's decision whether to admit evidence for an abuse of discretion. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "However, whether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo." *Id*. A trial court abuses its discretion when it admits evidence that is inadmissible as a matter of law. *Id*. A trial court abuses its discretion when it makes any error of law. *People v Giovannini*, 271 Mich App 409, 417; 722 NW2d 237 (2006). Additionally, a trial

---

[1] The Michigan Rules of Evidence were amended on September 20, 2023, effective January 1, 2024. This opinion relies on the version of MRE 804 in effect at the time this matter was decided by the trial court. The amended rules do not change the substance of the rules cited in this opinion.

court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes. *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007).

Whether a defendant was deprived on his or her constitutional right to present a defense is reviewed de novo. *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009). This Court must determine whether the beneficiary of the error has established that it was harmless beyond a reasonable doubt. *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999). "A constitutional error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *People v Shepherd*, 472 Mich 343, 347; 697 NW2d 144 (2005) (quotation marks, citations, and alterations omitted).

Under MRE 804(b)(1), the prior testimony of an unavailable declarant is admissible at trial where:

> Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

"Whether a party had a similar motive to develop the testimony depends on the similarity of the issues for which the testimony was presented at each proceeding." *People v Farquharson*, 274 Mich App 268, 275; 731 NW2d 797 (2007). Several factors have been outlined to determine whether the prosecution had a similar motive to examine a witness at a prior proceeding:

> (1) whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue; (2) the nature of the two proceedings-both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). [*Id*. at 278.]

A defendant has the right to present a complete defense, the right to present his or her own version of the facts, and the right to present his or her own witnesses to establish a defense. *Washington v Texas*, 388 US 14, 18-19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967). This is not an absolute right. A defendant must still "comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). "The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve." *People v King*, 297 Mich App 465, 474; 824 NW2d 258 (2012) (quotation marks and citation omitted).

Defendant argues that the trial court misapplied MRE 804(b)(1) and deprived him of the right to present a complete defense by refusing to admit the entirety of Arnold's plea hearing testimony. Defendant contends that the prosecution had a similar motive and opportunity to cross-examine Arnold at the plea hearing about the same issues at bar in defendant's case. Defendant also argues that while the goal of the plea hearing was to enter a valid guilty plea, the prosecution transformed the hearing into something more like a grand jury hearing and changed the goal of the

proceeding. By not allowing Arnold's entire testimony to be read at trial, defendant believes he was unable to present a complete defense.

The prosecution argues that it did not have either the opportunity or a similar motive to develop Arnold's testimony by cross-examination because the plea hearing was about Arnold's own guilt, not defendant's guilt. It argues the issue at the center of the hearing and the nature of the plea hearing was whether Arnold could satisfy the burden of proof needed to enter a valid guilty plea. The prosecution noted that any motive to further explore Arnold's testimony was vastly different than what it would have been at trial. The prosecution contends that it did not have the opportunity to cross-examine Arnold at the plea hearing either, and was instructed by the trial court to move on from a line of questioning because Arnold was not cooperating. The prosecution could not impeach her or highlight inconsistent statements from what she told police at the scene, and was limited in the lines of inquiry it could make compared to trial. The prosecution argues that the trial court properly applied MRE 804(b)(1) and that, because no error occurred, defendant could not have been precluded from presenting a complete defense. The prosecution also noted that defendant still made a complete defense at trial by arguing Arnold was the bad actor, and not allowing her entire testimony did not prevent defendant from making that case.

This Court agrees with the prosecution's argument. It is uncontested that Arnold was unavailable, but the prosecution did not have a similar motive or opportunity to develop Arnold's testimony through cross-examination. The focus of Arnold's plea hearing was to establish a factual basis for her guilty plea, not to build evidence against defendant. The trial court allowed the prosecution to ask several questions to continue establishing a factual basis for her plea. The prosecution did not have the opportunity to develop Arnold's testimony because it could not impeach her or continue its desired line of questioning because the court told it to move to the next question. Nothing was at stake for defendant in Arnold's plea hearing. Once Arnold had established her own guilt, she faced no further consequences and lacked the incentive to speak truthfully. Determining that the prosecution did not have a similar motive or opportunity to cross-examine Arnold was not outside the range of principled outcomes, and, therefore, was not an abuse of discretion.

Defendant makes no argument as to why MRE 804(b)(1) is arbitrary or disproportionate to its purpose. Defendant also never actually states what defense he was prevented from arguing during trial. As the prosecution noted, defendant did argue that he was an innocent bystander completely fooled by Arnold, which is presumably the same argument defendant would have made if Arnold's entire testimony was admitted. He was not precluded in any way from making a complete defense because he did, in fact, make the defense he claims to have been prevented from making. Defendant's right to present a complete defense was not infringed.

## II. FLIGHT INSTRUCTION

Defendant argues that the trial court abused its discretion when it gave the jury a flight, concealment, escape, or attempted escape instruction under M Crim JI 4.4. This Court disagrees.

While claims of instructional error are typically reviewed de novo, a trial court's determination that a jury instruction is applicable to the facts of a case is reviewed for an abuse of discretion. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). A trial court abuses

its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes. *Orr*, 275 Mich App at 588-589.

The trial court read the following jury instruction from M Crim JI 4.4 to the jury following closing arguments: "There has been some evidence that the defendant tried to hide and/or hid after the police arrested him. This evidence does not prove guilt. A person may run or hide for innocent reasons, such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt." "The determination whether a jury instruction is applicable to the facts of the case lies within the sound discretion of the trial court." *People v McKinney*, 258 Mich App 157, 163; 670 NW2d 254 (2003). "A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014) (quotation marks and citation omitted). "The jury instructions must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses, or theories if there is evidence to support them." *Id*. at 240 (quotation marks and citation omitted). "The trial court may issue an instruction to the jury if a rational view of the evidence supports the instruction." *Id*.

Defendant argues that his comment about knowing he should not have left the house the day he was arrested was a joke, and was not indicative of defendant being aware a warrant was out for his arrest and that he was avoiding the warrant by staying at home. He also argues that his assurance to his sister on the phone, that he would not attempt to flee if he got out on bond, does not support the flight instruction. The prosecution argues precisely the opposite, stating his comment made it seem like he was aware of his arrest warrant and was attempting to avoid arrest, and that, the topic of fleeing arising during defendant's phone calls from jail with his sister showed there should be concern that he would flee.

This Court agrees that defendant's remark to police about knowing he should have stayed inside that day was more than likely a joke, and that defendant's discussion about not fleeing if he got out on bond, was only mildly suspicious. However, the true meaning of both statements is reasonably debatable, and therefore, it was within the principled range of outcomes for the trial court to conclude they warranted the reading of the flight instruction. A rational view of the evidence presented at trial could lead a person to believe defendant knew there was a warrant out for his arrest, and therefore, wished he stayed inside at home the day he was arrested so he could have avoided arrest. Similarly, the conversations defendant had with his sister over the phone, where he insisted he would not attempt to flee if released on bond, can rationally indicate the idea of fleeing had crossed defendant's mind and was, at least at one time, under consideration. The trial court considered both arguments during trial and exercised its discretion to include the instruction. Therefore, it was not an abuse of discretion to read the flight instruction under M Crim JI 4.4.

## III. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecution committed misconduct and deprived him of his right to a fair trial when it improperly questioned defendant about whether a police officer had lied and when it made inflammatory statements during closing arguments. This Court disagrees.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defense counsel did not object to the prosecution's questions to defendant about whether he thought Deputy Timothy McNabb, of the St. Clair County Sheriff's Office, was lying or request a curative instruction. Defense counsel also did not object to the prosecution's comments during closing arguments or request a curative instruction. Therefore, this issue is not preserved.

Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *People v Clark*, 330 Mich App 392, 432; 948 NW2d 604 (2019). To show plain error, a defendant must prove "1) an error occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected his substantial rights, meaning it affected the outcome of the proceedings." *People v Jarrell*, 344 Mich App 464, 481-482; 1 NW3d 359 (2022). After those three requirements are satisfied, reversal is only warranted when the plain error "resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. (quotation marks and citation omitted).

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *Dobek*, 274 Mich at 64. "A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Id*. Prosecutorial misconduct cases are decided on a case by case basis, and the prosecutor's remarks must be evaluated in full context after this Court has reviewed the entire record. *Id*. "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id*. "Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *Id*. "It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *Id*. at 71.

In *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985), the Court held it was improper for the prosecution to ask the defendant to comment on the credibility of a prosecution witness, but that the error did not result in unfair prejudice to the defendant. In *Buckey*, the Court stated it was not a case where the defendant might have been "prejudiced by improper bolstering of the credibility of prosecution witnesses or by allowing an opinion on his guilt or credibility to be expressed." *Buckey*, 424 Mich at 17. Instead, it was an instance where the prosecution was trying to discredit the defendant by "inviting him" to call the prosecution's witness a liar. *Id*. The Court noted that the defendant "dealt rather well with the questions" and failed to discern how he was harmed by the questions. *Id*.

*Buckey* is analogous to this case. Here, the prosecution contrasted defendant's testimony with Deputy McNabb's on several occasions, and asked defendant if he thought Deputy McNabb was lying. However, based on an evaluation of the prosecutor's comments in the context of the competing nature of each person's testimony, his questions, even though improper, were not prejudicial. The prosecutor fairly pointed out defendant's inconsistent statements to those of Deputy McNabb, albeit in blunt fashion, which were integral in showing defendant illegally possessed firearms. Defendant handled the questions well and made it clear that he had a different recollection of the conversation he had with Deputy McNabb. Similar to *Buckey*, this was an

instance of the prosecution attempting to discredit defendant by inviting him to call a police officer a liar. The prosecution's remarks during closing arguments, saying it would be shameful to buy defendant's story and that defendant called a police officer a liar, were also not prejudicial, even though they were improper. It made clear the differences in testimony heard during the trial, and defendant cannot show how he was harmed by these statements, considering his testimony was in opposition of the police officer's. Even if the prosecution's conduct was prejudicial, it would not have changed the outcome in this case given the copious amounts of evidence presented during trial that defendant possessed firearms, possessed drugs, and maintained a drug house. Any prejudicial effect caused by an error could have been alleviated by a curative instruction. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). The trial court also informed the jury that the statements made by attorneys were not evidence.

## IV. CUMULATIVE ERROR

Defendant argues that the cumulative effect of the prosecution's errors was so prejudicial that it warrants a new trial. This Court disagrees.

An issue is preserved for appellate review if it was "raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defendant did not raise a cumulative error objection in the trial court. Therefore, this issue is not preserved.

Unpreserved constitutional claims are reviewed for plain error affecting substantial rights. *Jarrell*, 344 Mich App at 481. To show plain error, a defendant must prove "1) an error occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected his substantial rights, meaning it affected the outcome of the proceedings." *Id*. at 482. After those three requirements are satisfied, reversal is only warranted when the plain error "resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. (quotation marks and citation omitted).

This Court is limited to considering whether actual errors had the cumulative effect of depriving defendant of a fair trial. *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995). Individual claims of error either have merit or they do not. *People v LeBlanc*, 465 Mich 575, 591 n 12; 640 NW2d 246 (2002). The Court in *LeBlanc* stated:

> A ruling or action that is almost wrong does not become an error on the ground that, in the same case, other rulings or actions were almost wrong, too. Thus, "cumulative error," properly understood, actually refers to cumulative unfair prejudice, and is properly considered in connection with issues of harmless error. Only the unfair prejudice of several actual errors can be aggregated to satisfy the standards set forth in *People v Carines*, 460 Mich 750, 774, 597 NW2d 130 (1999). [*Id*.]

Defendant has failed to show that several errors resulting in unfair prejudice actually occurred. While the prosecution asked improper questions during defendant's cross-examination and made improper comments during closing arguments, neither resulted in unfair prejudice, as stated earlier. This case is analogous to *Dobek*, which held that reversal on the basis of cumulative error was unwarranted when the only errors found were minor instances of prosecutorial misconduct.

*Dobek*, 274 Mich App at 107.  Therefore, relying on both *LeBlanc* and *Dobek*, defendant cannot show a cumulative effect of any errors that denied him a fair trial.

Affirmed.

/s/ Michael J. Riordan
/s/ David H. Sawyer